IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:00cr206

DACO ZANQUELLO EDWARDS

## MEMORANDUM OPINION

This matter is before the Court on the MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT filed by counsel (ECF No. 86), the United States' Response to Defendant's Motion for a Sentence Reduction Pursuant to Sectio 404 of the First Step Act of 2018 (ECF No. 90), the DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (ECF No. 93). Having considered those documents and the FIRST STEP ACT AMENDMENT APPLICATION WORKSHEET (§404) (ECF No. 81), and the Presentence Report (ECF No. 79), and reviewed the entire file, it is hereby ORDERED that the defendant's *pro se* Motion to Modify Judgment § 3582(c)(1)(A) (ECF No. 76) and the MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (ECF No. 86) will be denied.

## BACKGROUND

On July 7, 2000, Daco Zanquello Edwards entered a plea of guilty to a two count Criminal Information charging him with conspiracy to distribute crack cocaine in violation of 21 U.S.C.

Case 3:00-cr-00206-REP Document 100 Filed 12/09/24 Page 2 of 13 PageID# 477

§ 846 (Count One) and using and carrying a firearm to commit murder during drug trafficking offenses in violation of 18 U.S.C. §§ 924(c), 924(j), and (2) (Count Two).

According to the STATEMENT OF FACTS accompanying the guilty plea (ECF No. 9), the conspiracy to which Edwards pled guilty lasted for approximately five years. During the term of that conspiracy, Edwards participated in the distribution of more than 1.5 kilograms of crack cocaine. He also used a gun to shoot another drug dealer and stole his supply of drugs (approximately one ounce of crack cocaine).

It is undisputed that Edwards was 17 at the time of the murder committed during the course of the conspiracy. It is also undisputed that, by that time, Edwards had accumulated a substantial number of offenses as a juvenile. (ECF No. 79, ¶¶ 11-19). Additionally, at the time of conviction in this case, Edwards had a substantial criminal history as an adult largely involving drug trafficking and the use of weapons. (ECF No. 79, ¶¶ 20-29).

At the time of sentencing, the punishment for Count One was ten years to life imprisonment and the punishment for Count Two was life imprisonment. Edwards had a criminal history category of VI with a total offense level of 40. The guidelines range for imprisonment was 360 months to life. Edwards was sentenced to 480

months imprisonment on each count of conviction to run concurrently.

As a result of the Fair Sentencing Act of 2010, the statutory penalty for Count One was reduced to five to forty years imprisonment and the punishment for Count Two would be unchanged and remain at life imprisonment. The offense level would remain therefore at 40 and the criminal history category would still be VI. The guidelines range of imprisonment would be 360 months to life but, because of the statutory maximum for Count One, the restricted guideline for that count would be 360 months to 480 months.

On November 13, 2002, the defendant's sentence of imprisonment was reduced to change of the term of imprisonment from 480 months to 340 months on Count One. (ECF No. 39). In all other respects, the Judgment In A Criminal Case entered herein remain unaffected and continued in full force and effect.

Edwards bases his motion for sentence reduction under § 404 of the First Step Act on the assertion that he was a teenager when the offense conduct took place and the related assertion that he has "transformed his thinking and has matured far beyond where he was in his teenage years and is deserving of this opportunity to have his sentence reviewed and reduced," i.e., post-conviction rehabilitation. (ECF No. 86, p. 2). He also offers evidence that

3

he has "worked to prepare himself for life after prison by obtaining his GED and completing an impressive number of educational courses." Id. And, indeed, as illustrated in ECF No. 86-1, Exhibits A through C, Edwards has indeed taken an impressive number of educational courses and obtained his GED. He also has shown that he serves as a caretaker for an elderly inmate and "has done his best to avoid disciplinary infractions [while in prison]." Id.

Edwards takes the view that, by virtue of the decision of the Supreme Court of the United States in Concepcion v. United States, 142 S. Ct. 2389 (2022), the Court, under the First Step Act, has discretion to take into account all factors on which he relies to reduce his sentence as long as the reduction is within the statutory limits. And, he is correct.

The United States opposes any reduction in sentence because, although it acknowledges that Edwards is eligible for sentence reduction under the statute, the sentencing factors of 18 U.S.C. § 3553(a) counsel against reduction of sentence.

### DISCUSSION

Congress passed the Fair Sentencing Act of 2010 to correct the wide disparity between crack and powder cocaine sentencing. Section 2 of that Act increased the amount of crack cocaine needed

4

to trigger a 5-to-40 year sentencing range from 5 grams to 28 grams. § 2(a)(2), 124 Stat. 2372. The Fair Sentencing Act did not apply retroactively, but in 2011, the Sentencing Commission amended the Sentencing Guidelines to lower the Guidelines range for crack-cocaine offenses and applied that reduction retroactively for some defendants. In 2018, Congress enacted the First Step Act, authorizing district courts to "impose a reduced sentence" for defendants serving sentences for certain crack-cocaine offenses "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." Pub. L. 115-391, § 404(b), 132 Stat. 5222 ("§ 404").

In Concepcion v. United States, 142 S. Ct. 2389 (2022), the Supreme Court of the United States instructed how to assess motions for reduction of sentence under § 404. In particular, the question presented in Concepcion was "whether a district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." Id. at 2396. Under Concepcion, "they may." Id.

Making quite clear that the First Step Act "does not compel courts to exercise their discretion to reduce any sentence based on those arguments," the Supreme Court, in like fashion, made quite

5

clear that district courts are obligated "to consider intervening changes when parties raise them," "because district courts are always obligated to consider non-frivolous arguments presented by the parties." Id.  In support of his request for a reduced sentence, Concepcion argued that, since his sentencing, the Guidelines had changed and that under the amended Guidelines he would no longer be considered a career offender because one of the predicate convictions that permitted application of the career offender enhancement had been vacated and because the remaining convictions would no longer be considered crimes of violence that trigger the enhancement. Thus, said Concepcion, without the career offender enhancement, the revised Guideline range would be considerably different than that which had obtained at his sentencing.

Second, Concepcion identified post-sentencing evidence of rehabilitation, in particular "successfully completing drug and vocational programming.  He also offered evidence of a stable reentry plan and a letter from the Bureau of Prisons' chaplain attesting to his spiritual growth while incarcerated." Id. at 2397-98.  The Supreme Court prefaced its discussion with the following observation:

> Federal courts historically have exercised this broad [sentencing] discretion to consider <u>all relevant information</u> at an <u>initial</u>

6

> <u>sentencing hearing, consistent</u> with their <u>responsibility to sentence the whole person before them</u>. That <u>discretion</u> also <u>carries forward to later proceedings that modify</u> an <u>original sentence</u>.

<u>Id.</u> at 2398 (emphasis added). Indeed, the Supreme Court instructed that "[t]he only limitations on the court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress and the statute or by the Constitution." <u>Id.</u> at 2400 (citations omitted). And, as explained by the Supreme Court, "Congress in the First Step Act simply did not contravene this well-established sentencing practice" with reference to a "covered offense" (a violation of a federal criminal statute, the statutory penalties for which are modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." <u>Id.</u> at 2401. The Court then explained that the only limit on the process of reducing the sentence is that the reduced sentence must be "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." <u>Id.</u>

Turning to the third section of the First Step Act, § 404(c), the Supreme Court identified the two "explicit limitations on the relief that was made available by the statute." Both limitations simply prohibit the making of motions in the event of either a previous reduction under the Fair Sentencing Act, section 2 or 3,

7

or if a motion made under § 404 had been denied after a complete review. Id. ("A district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act or if the court considered and rejected a motion under the First Step Act.")

Having made clear the scope of the statute, the Supreme Court surveyed the kinds of information that had been considered in First Step Act motions to include evidence of post-sentencing rehabilitation, evidence of unrelated Guideline amendments when raised by the parties, post-sentencing evidence of violence or prison infractions, and non-retroactive Guideline amendments to help inform whether to reduce sentences at all and, if so, by how much. With that in mind, the Court then clearly held "that the First Step Act allowed district courts to consider <u>intervening changes of law or fact</u> in exercising their discretion to reduce a sentence pursuant to the First Step Act." Id. at 2404 (emphasis added).

Finishing its analysis, the Supreme Court held that:

> Put simply, the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief. Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties'

8

> arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it.

Id. at 2404-05. It is within that framework that the present motion must be considered.

The principal ground upon which Edwards seeks a reduction of sentence is that he was very young (17) when the most serious offenses of conviction were committed and that the conduct in the offenses of conviction occurred during the time that he was 16 to 21 years of age. (ECF No. 86, pp. 7-13). His argument is best captured by the following text:

> Given the fact that both the Fourth Circuit and the Supreme Court have recognized the importance of taking juvenile status into account during sentencing and resentencing, and because the Court may do so under the instructions provided by the Supreme Court in Concepcion, it would be proper for the Court to take into consideration the age of Mr. Edwards when he committed the conduct covered by his convictions. Mr. Edwards was 16 to 21 years old over the course of the activity that brought him before the Court and was only 17 years old-a juvenile-at the time of the shooting involved in Count Two. PSR ¶4. This is certainly young enough for Mr. Edwards to have suffered from a relative lack in behavioral, psychological, and neurological development resulting in a diminished ability to understand risks and consequences and to make informed decisions. See, e.g., Kathryn L. Modecki, Addressing Gaps in the Maturity of Judgement [sic] Literature: Age Differences and Delinquency, 32 Law & Hum. Behav. 78, 85 tbl. 3 (2007) (finding that even college-aged

9

>adults share adolescent's diminished ability to evaluate situations before acting).

The Government obviously concedes that Edwards was 17-1/2 years old at the time he committed the murder that is the basis for Count Two and that he was 16 to 21 years old when he participated in the conspiracy that is the basis for Count One. According to the Government, Edwards' arguments that he was a "child" at the time of the murder ignores the fact that he amassed a significant criminal history by that time. And, that is true. According to the Government, the conduct and events reflected in the criminal history up to the time of his 17th birthday are "hardly the acts of a 'child.'" (ECF No. 90, p. 4) The Government then goes on to explain where shortly before Edwards' 18th birthday, he was impeding the police and shortly after his 18th birthday (in May 1996), he was convicted of possessing cocaine, possessing a firearm in possession of cocaine, escape and possession of marijuana. And a few months later, he was convicted of escape and forgery charges in the City of Richmond. The United States goes on to recount Edwards' subsequent convictions all of which led to a criminal history category of VI and all of which shows, says the Government, that Edwards was a very dangerous person at the time he was incarcerated in this case.

10

Next, the United States demonstrates that Edwards' assertion that he has "done his best to avoid disciplinary infractions," while in prison is actually lacking in merit and recounts a lengthy history of improper conduct while in prison. And that record indicates that Edwards "best" did not do much to "avoid disciplinary infractions."

Edwards is eligible for sentence reduction under Section 404 of the First Step Act. It is significant to note that the only change to Edwards' guideline range in this matter is that the statutory maximum sentence for Count One was reduced from life to forty years and thus there is a restricted guideline range of 480 months on that count. Whatever else may be said, his current sentence of 340 months is below the 360 to life that is a consequence of his conviction on Counts One and Two and below the restricted guideline range of 360 to 480 months on Count One.

So the key question is whether Edwards has shown that his youth and the changes in law respecting the sentencing of youthful offenders warrants a reduction in the sentence. For youth to have the affect of warranting a reduced sentence, the record must somehow reflect that there is a causal nexus between the defendant's youth and the offense of conviction. There is no such causal nexus here. The defendant's argument is based merely upon his age at the time of conviction. From that, it is readily

11

discernible that neither death nor life imprisonment is an appropriate sentence for a young person. But Edwards' sentence is not a sentence of either death or life imprisonment. Therefore, the decisions upon which Edwards bases his argument do not warrant a conclusion that his age at the time of the offense does not warrant a sentence of 340 months in prison.

Apparently recognizing the absence of any causal evidence, Edwards emphasizes the rehabilitative efforts that he has made while in prison. And, as previously noted, those rehabilitative efforts have been significant. However, significant though those efforts are, they simply do not outweigh the terribly serious crimes which Edwards committed. Moreover, his misconduct in prison teach that his bent toward misconduct and disregard of the law have not been curbed by the fact of imprisonment.

On balance, the protection of the public, the promotion and respect for the law, and the purpose of deterrence simply will not be served by granting Edwards' motion. And, in fact, it is appropriate that Edwards complete the already-reduced sentence (the reduction was more than ten years).

12

## CONCLUSION

For the foregoing reasons, the MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (ECF No. 86) will be denied.

It is so ORDERED.

/s/ /R E P/
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December 9, 2024